James E. McKENZIE, Appellant,

v.

WHAYNE SUPPLY COMPANY; Denis S. Kline, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 94–SC–622–WC.

Supreme Court of Kentucky.

March 23, 1995.

Case Ordered Published by Supreme Court May 2, 1995.

J. Drew Anderson, Kirk Law Offices, Prestonsburg, for appellant.

Peggy Tolson Greer, Clark, Ward & Cave, Lexington, for appellee Whayne Supply Co.

## MEMORANDUM OPINION OF THE COURT

Claimant's work history consisted of 14 years as a mechanic in strip mines, 9 years as a construction mechanic, and 5 years with the defendant-employer as a heavy equipment repairman. Claimant testified that he was exposed to coal dust in the course of his work for the latest employer and that the work consisted of performing on-site repair, maintenance and operation of heavy equipment for various businesses, largely strip mines. The employer's business sold and serviced heavy equipment, but it did not engage in coal mining. Claimant testified that none of his work was in underground mines.

The Administrative Law Judge (ALJ) dismissed the claim because he determined that claimant was not employed "in the mining industry" and, therefore, was not eligible for a retraining incentive benefit (RIB) award. KRS 342.732(1)(a). Accordingly, there was no finding whether claimant had received an injurious exposure to coal dust in the latest employment. Likewise, there was no finding concerning whether claimant had contracted coal workers' pneumoconiosis. The evidence of the disease was conflicting, with claimant asserting that he had contracted category 1 pneumoconiosis from his exposure to coal dust in the latest employment. No petition for reconsideration was filed.

Claimant appealed to the Workers' Compensation Board (Board) and argued that RIB benefits should be available to anyone who had contracted the disease and who was employed in the severance or processing of

coal, as defined in KRS 342.0011(23)(a). The Board rejected the argument and affirmed the ALJ, stating that to do otherwise would produce absurd results. To include workers employed in "all activities" performed at the various work sites listed in the statute would "potentially include clerical work, food vending, traveling sales, painting, etc."

The Court of Appeals affirmed and agreed with the Board's determination that the legislature intended to limit RIB benefits to those workers "actually involved in the mining industry and did not intend for this to include those who service that industry." The court noted that someone like the claimant, a trained mechanic, did not need retraining. Unlike a miner who possessed no other skills, he could easily find employment away from the coal mines.

■ We reverse. KRS 342.732 states, in pertinent part, as follows:

(1) Notwithstanding any other provision of this chapter, income benefits and retraining incentive benefits for occupational pneumoconiosis resulting from exposure to coal dust shall be paid as follows:

(a) If the administrative law judge finds that an employee has a radiographic classification of category 1/0, 1/1, or 1/2 ... he shall award a one time only retraining incentive benefit.... The one time only retraining incentive benefit awarded under this paragraph may be collected semimonthly as provided in KRS 342.040, by the employee while he continues to work in the mining industry. The retraining incentive benefit may be collected in a lump sum when the employee leaves his hazardous employment in the mining industry if the parties agree and the agreement is approved by the administrative law judge....

In dismissing this claim, the ALJ focused on the words "in the mining industry" which are contained in subsection (1)(a) of the statute and ignored the fact that subsection (1) does not limit eligibility for the benefits awarded under any of its three subsections to workers who acquired their occupational exposure to coal dust while employed by a company which was engaged in coal mining or to workers who are coal miners. The term "mining industry," as it is used in subsection (1)(a), is not defined, and nothing in the statute limits the mining industry to companies which mine coal. Had the legislature intended to limit application of the statute as urged by the employer, it is more likely to have utilized the words "in the coal mines" rather than the words "in the mining industry." [1] Furthermore, whether claimant needs retraining is not material when determining his eligibility for a RIB. Subsection (1)(a) requires no finding that a worker who has contracted coal workers' pneumoconiosis be in need of retraining nor, at the time this claim was filed, did it require that the benefit be used for retraining. The benefit simply provides what its title indicates, an incentive for retraining. See Eastern Coal Corp. v. Blankenship, Ky., 813 S.W.2d 808 (1991).

The evidence in the instant case was that claimant repaired, maintained, and operated heavy equipment at mine sites. The employer's argument focused on the fact that it was not engaged in mining but that it serviced the mining industry.

Contrary to the view taken below, we do not think it is logical to conclude that the legislature intended different compensation provisions for certain workers whose pneumoconiosis was caused by an occupational exposure to coal dust simply because their employers provided service for coal mining companies rather than actually engaging in coal mining. If that were the case, workers who performed identical services and were injuriously exposed to coal dust at work would be treated differently for compensation purposes based solely upon the character of the employer's business, without regard to the nature of the work being performed or the workers' exposure to coal dust while engaging in that work.

■ We believe that the proper focus is upon the nature of the employment in which the worker is engaged and upon whether the

1. It is noteworthy that the 1994 amendments to KRS 342.732(1)(a) added the phrase "in the severance and processing of coal as defined in KRS 342.0011(23)(a)" after the phrase "in the mining industry." This is precisely the interpretation of the pre–1994 law urged by the claimant.

employment was a cause of the worker's disease. Where the employment caused an injurious exposure to the hazards of coal workers' pneumoconiosis and the worker contracted the disease as a result of that exposure, it is immaterial that the employer's business involved the sale and on-site maintenance of heavy equipment used at coal mines and did not include the mining or processing of coal. In either event, if the worker contracted the disease as a result of an occupational exposure to coal dust which was received in that employment he ought to be compensated pursuant to KRS 342.732.

In the instant case, the ALJ dismissed this claim solely because claimant's employer did not engage in coal mining. What we hold is that to do so was erroneous. Because the claim was dismissed based on a misinterpretation of KRS 342.732(1)(a), no findings were made concerning whether claimant had received an injurious exposure to coal dust in the latest employment or whether he had contracted pneumoconiosis therefrom. Under those circumstances, no petition for reconsideration or request for specific findings was required.

Accordingly, the decision of the Court of Appeals is hereby reversed, and the case is remanded to the ALJ for further proceedings that are consistent with this opinion.

All concur.